IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

STARR INDEMNITY & LIABILITY
INSURANCE COMPANY,

*Plaintiff,*

v.                                                       CAUSE NO. 3:24-CV-576-CWR-ASH

LIBERTY MUTUAL FIRE
INSRURANCE COMPANY, *et al.,*

*Defendants.*

## ORDER

A variety of motions, involving multiple lawsuits, are pending before the Court. Starr filed the current action, asserting that they were "ordered" by this Court to pay a judgment in another case, and they now are due to be indemnified. Starr based this assertion on a misrepresentation of a prior Court Order. The Court recognizes and appreciates zealous advocacy but, unfortunately, this is not the first time Starr has moved beyond zealous advocacy and has engaged in less than admirable conduct during these related cases. The Court is unimpressed.  Starr and its counsel will do better going forward.

Daniel Coker filed a motion to dismiss, Docket No. 17, and a motion seeking sanctions, Docket No. 66; Starr filed two motions seeking leave to amend the complaint, Docket Nos. 33 and 62. For the reasons that follow, the motion to dismiss is granted in part and denied in part; the motion for sanctions is denied; and the motions for leave to amend are denied.

## Background

This action arises from a motor vehicle accident that occurred on June 18, 2021. Mississippians Matthew Feldman and Ethan Parker were working for River & Roads

1

Directional Drilling, LLC, on a pipeline project in Indiana. After dinner one night, Mr. Parker was driving Mr. Feldman back to their rented cabin in a company vehicle, when he lost control and struck a guard rail. The accident caused grievous personal injury to Mr. Feldman. Three months later, Mr. Feldman sued Mr. Parker for negligence in the Circuit Court of Newton County, Mississippi (the "Underlying Case").

Liberty Mutual was the primary insurer. Its policy provided $1 million of coverage for these kinds of accidents. It paid for Mr. Parker's defense and engaged Daniel Coker Horton & Bell, P.A. to represent Mr. Parker in the Underlying Case. Very early in that action, Liberty and River & Roads determined that Mr. Feldman was not acting in the course and scope of his employment at the time of the accident. Several considerations went into that determination. Two of the more important ones were that Mr. Feldman had a fixed work site and fixed hours. The accident did not occur at that site or during those hours. In any event, that determination had several consequences. Perhaps most significant, it meant Mr. Parker would not try to move Mr. Feldman's claim into the workers' compensation system. *See Hanco Corp. v. Goldman*, 178 So. 3d 709, 713 (Miss. 2015) (defining the exclusivity provision of the Mississippi Workers' Compensation Act). Instead, everyone proceeded to litigate the Underlying Case in state court.

Starr Indemnity & Liability Insurance Company was the excess insurer. It had $14 million of coverage available to defend (and, if necessary, indemnify) Mr. Parker, if Liberty's policy was exhausted.

Starr was paying close attention. It knew early on that its coverage was implicated because the monetary damages sought were significant. Starr also knew early on about the course and scope of employment determination. In the year and a half that elapsed from

September 2021 to early 2023, as the parties gathered their discovery and experts for the Underlying Case, Starr was heavily involved in Mr. Parker's defense.

In March 2023, on the eve of a scheduled mediation, Starr announced for the first time that it had no coverage under its policy. The same day it issued its denial letter, Starr initiated an action against River & Roads, Mr. Feldman, and Mr. Parker in this Court. *Starr Indem. & Liab. Ins. Co. v. River & Roads Directional Drilling, LLC*, No. 3:23-cv-215 (S.D. Miss.) (hereinafter "*Starr I*"). In that case, Starr sought a declaratory judgment that it had no obligation to indemnify Mr. Parker.

While *Starr I* remained pending, the Underlying Case was tried to verdict. On August 19, 2024, the Court notified the parties in *Starr I* that the Court was still researching the law to determine if a resolution of the issues in *Starr I* could be reached on the papers or would require submission to a jury. *Starr I* at Docket No. 297. Noting this, the Court continued:

> For now, the Court will **simply ask** both insurance companies to keep in mind that their insured is trapped in the middle of this proxy war. Parker is a layperson. He could not have known that Liberty's initial determination would deprive him of a workers' comp defense. Nor could he have known that Starr's decision to participate in his defense could coexist with its later denial of coverage, rendering him without excess insurance. Certainly River & Roads could not have intended this when it purchased the insurance policies.
>
> For these reasons, the Court **encourages** all involved to find a way for the insurance companies to protect their insured, even if it results in the need for future proceedings to resolve their claims and arguments against each another.

*Id.* (emphasis added). Ultimately, the jury in the Underlying Case awarded Mr. Feldman $4,078,223.00 in compensatory damages. The state court entered final judgment against Mr. Parker for this amount plus post-judgment interest at 8% per annum on August 20, 2024. Soon thereafter, Liberty paid its $1 million policy limits toward satisfaction of that judgment.

On September 18, 2024, Starr paid the balance of the judgment plus accrued interest, while its request for declaratory relief in *Starr I* remained pending before this Court.

This finally brings us to the present case. On September 23, 2024, just days after Starr paid the balance of the judgment in the Underlying Case, Starr commenced this action against Liberty and Daniel Coker. *Starr Indem. & Liab. Ins. Co. v. Liberty Mutual Fire Ins. Co.*, No. 3:24-cv-576 (S.D. Miss.) (hereinafter "*Starr II*").[1] In this action, Starr seeks, *inter alia*, to claw-back from Liberty and Daniel Coker the over $3 million it paid to satisfy the judgment entered against Mr. Parker in the Underlying Case. Starr's primary contention as to Daniel Coker is that Mr. Parker's defense counsel failed to assert workers' compensation related affirmative defenses, which Starr believes would have avoided liability to Mr. Feldman and by extension would have avoided Starr's obligation to provide excess liability coverage for Mr. Parker.

## Legal Standards

### 1.    *Leave to Amend*

"Leave to amend is not automatic, but a district court needs a substantial reason to deny a party's request for leave to amend." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (quotation marks and citation omitted). "Leave to amend may be denied for . . . futility of the amendment." *Id.* (quotation marks and citation omitted). "Futility here means that the amended complaint would fail to state a claim upon which relief could be granted." *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) (quotation marks and citation omitted).

---

[1] Starr did not serve defendants in *Starr II*, until after it filed an Amended Complaint on December 19, 2024. Docket No. 5.

### 2. *Motion to Dismiss*

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "does not need detailed factual allegations," but the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. A claim is plausible when "the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*; *see also Twombly*, 550 U.S. at 555 (noting that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation") (quotation marks and citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## Discussion

Starr's First Amended Complaint is the currently operative complaint. Docket No. 5. Therein Starr brings seven causes of action: Equitable Subrogation, against Liberty and Daniel Coker (Count I); Contractual Subrogation, against Liberty and Daniel Coker (Count II); Breach of Duty to Defend, against Liberty (Count III); Negligence/Gross-Negligence, against Liberty (Count IV); Negligence/Legal Malpractice, against Daniel Coker (Count V); Breach of Fiduciary Duty, against Daniel Coker (Count VI); and Unjust Enrichment, against Liberty (Count VII).

### I.    Motions to Amend

Starr attached to its first motion seeking leave to amend its proposed Second Amended Complaint, containing changes to Count II "to include the subrogation provision from Starr's policy." Docket No. 34. When Starr filed its second motion seeking leave to amend, it included those same changes in its proposed Third Amended Complaint. Docket No. 62 at 2 ("The Third Amended Complaint makes the proposed change discussed above in addition to the proposed change requested in Starr's first Motion to Amend."). Because the changes sought in the first motion for leave are entirely contained in Starr's second motion for leave, the Court denies Starr's first motion for leave to amend, Docket No. 33, as moot.

In its second motion for leave, Starr also seeks to alter allegations contained in paragraph 49 of the operative complaint. That paragraph reads:

> Before the dispositive motions in the Declaratory Judgment Action as to coverage were ruled upon, the Underlying Lawsuit went to trial. Knowing that the Underlying Lawsuit was in trial and that Parker was exposed to a substantial judgment, the Court in the Declaratory Judgment Action on August 19, 2024 **ordered** 'both insurance companies to keep in mind that their insured is trapped in the middle of this proxy war' and **demanded** that 'all involved find a way for the insurance companies to protect their insured, even if it results in the need for future proceedings to resolve their claims and arguments against each other . . .'

Docket No. 5 at 17 (emphasis added) (quoting this Court's August 19, 2024, Order entered in *Starr I* at Docket No. 297). This is not only a misrepresentation; after January 31, 2025, it incontrovertibly became a knowing misrepresentation. In an opinion issued that day, the Court explained in clear language that Starr's claim that "it was compelled to pay $3 million not by its contract of insurance, but by a Court Order" was "simply not true." *Starr I*, 2025 WL 1484716, at *3 (S.D. Miss. Jan. 31, 2025). There, the Court explained the effect of its Orders previously entered in *Starr I*:

6

> The Court's Orders in this case encouraged the parties to find a resolution, but didn't require any payment. This case was instead set for trial for a jury to evaluate coverage by estoppel. Such a trial doesn't make sense if coverage had already been adjudicated.

*Id.* Daniel Coker filed its motion to dismiss, highlighting Starr's mischaracterization of this Court's Order, on January 30, 2025. The Court entered the above-quoted explanation of its Orders the next day. Starr moved to amend its complaint weeks later, on February 24, 2025, but kept its misrepresentation of the Court's Order undisturbed. Docket No. 33-1 at 17 (containing same mischaracterization). Apparently, it took the threat of sanctions for Starr to change course. Docket No. 63 (noting that "Daniel Coker has threatened a sanctions motion" and admitting that Starr filed its second motion for leave in an effort "to avoid collateral proceedings on the undisputed wording of the Court's Order"). It benefits no one when a party misrepresents this Court's Orders. When considering this conduct against the backdrop of Starr's conduct throughout these related proceedings,[2] it is concerning. It is also noteworthy in the context of Starr's current request for equitable relief.

Regardless of the motivation, Starr's proposed amendment is futile. Starr even acknowledges this, stating in its second request for leave:

> Starr's proposed amendment now should not impact the outcome on Daniel Coker's Motion to Dismiss *at all*. If Daniel Coker is entitled to prevail because Starr is a volunteer and did not pay the judgment under compulsion, then that would be the result *whether the current amendment is granted or not*.

---

[2] *See Starr I*, 2025 WL 1484716, at *2 ("The course of this litigation has in fact 'been less than admirable.' A number of examples could illustrate the problems, but one of them should speak for itself. It is perhaps not great when a party files a 20-page brief after a sanctions hearing trying to explain why statements its attorneys presented *at that very sanctions hearing* are not themselves misrepresentations. And yet that is where we are.") (emphasis in original) (quoting *Genesis Ins. Co. v. Wausau Ins. Companies*, 343 F.3d 733, 738 (5th Cir. 2003)).

Docket No. 63 at 4 (emphasis added). This admission that its proposed amendment would not impact the legal deficiency asserted in Daniel Coker's motion to dismiss amounts to a concession that amendment would be futile under Rule 15. And, as the Court's analysis below further demonstrates, Starr's proposed amendments are indeed futile. Starr's second motion for leave to amend, Docket No. 62, is denied.

## II.    Motion to Dismiss

Starr states four of its claims in the operative complaint against Daniel Coker: Equitable Subrogation (Count I); Contractual Subrogation (Count II); Negligence/Legal Malpractice (Count V); and Breach of Fiduciary Duty (Count VI). While the first two claims are styled as subrogation, that is merely the vehicle for stating the claims; they are in substance, claims for indemnification.[3] The Court begins here.

Daniel Coker argues that the "voluntary payment doctrine" precludes Starr's subrogation claims. Those two claims seek indemnity for the money Starr paid toward satisfying the judgment entered in the Underlying Case. Because Starr paid that sum voluntarily, Daniel Coker argues, Starr may not seek indemnity now. This is correct.

Subrogation "is a creature of equity, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in equity and good conscience, ought to pay it." *Presley v. Am. Guarantee & Liab. Ins. Co.*, 116 So. 2d 410, 416 (Miss. 1959). "To recover indemnity it is necessary for the plaintiff to allege and prove that he was legally liable to the person injured, and consequently, paid under compulsion. Otherwise, the payment is a

---

[3] *See* Docket No. 5 at 19 (stating with respect to Count I "Starr now brings this action for the indemnified damages sustained by Parker and paid by Starr"); *id.* at 20 (stating with respect to Count II "Starr now brings this action for the indemnified damages sustained by Parker and paid by Starr").

8

voluntary one for which there can be no recovery." *Sw. Miss. Elec. Power Ass'n v. Harragill*, 182 So. 2d 220, 223 (Miss. 1966). *Cf. St. Paul Fire & Marine Ins. Co. v. State Volunteer Mut. Ins. Co.*, No. 2:97-CV-47, 1998 WL 173222, at *2 (N.D. Miss. 23 Feb. 1998) (in subrogation context, insurer who was legally obligated to make payments was not a "mere volunteer").

Here, at the time Starr paid the sum for which it now seeks indemnity, it denied that it was required to do so. Starr's position throughout *Starr I*, which remained pending at the time of payment, was that Starr was under no obligation to indemnify Mr. Parker for damages sustained in the Underlying Case. Indeed, that was the very goal Starr sought to achieve by filing that action: a declaration that it owed no duty to indemnify, *i.e.*, that it was not compelled to make that payment.

The Court must determine, considering Starr's simultaneous and inherently contradictory positions at the time it issued payment, whether Starr is now precluded from asserting that it *was* in fact compelled to satisfy the judgment against Mr. Parker in the Underlying Case. Helpfully, the Fifth Circuit, after receiving input from the Mississippi Supreme Court, has already determined that compulsion cannot arise in such circumstances.

In 2018, the Fifth Circuit certified the following question to the Mississippi Supreme Court:

> Does an insurer act under 'compulsion' if it takes the legal position that an entity purporting to be its insured is not covered by its policy, but nonetheless pays a settlement demand in good faith to avoid potentially greater liability that could arise from a future coverage determination?

*Colony Ins. Co. v. First Specialty Ins. Co.*, 726 F. App'x 992, 995-96 (5th Cir. 2018). The Mississippi Supreme Court answered in the negative. 262 So. 3d 1128, 1132 (Miss. 2019) ("We answer the first certified question in the negative."). Upon review of its precedent, that court

rejected the argument that a payor acts under compulsion when it acts merely to protect its own interests. *Id.* at 1134 ("We decline to adopt Colony's argument that a payment is not voluntary if the payor is acting under compulsion to protect its own interests. The above cases each contain payments that the payors made to protect their own interests; and yet were not considered to be made under compulsion."). After receiving this answer, the Fifth Circuit, noting that Colony had filed supplemental briefing objecting to the Mississippi Supreme Court's decision, provided the following summary, which the Court finds particularly instructive here:

> Colony also claims the court disregarded the fact that it was presented with a settlement offer prior to the state court ruling on its declaratory judgment action and that refusing to settle at that time could have led to an even larger judgment against Omega. We disagree. The Mississippi Supreme Court expressly considered these facts and still held that the settlement lacked compulsion, observing that "Colony had the option to pursue its declaratory-judgment action before it paid the Taylor settlement."

*Colony Ins. Co. v. First Specialty Ins. Co.*, 761 F. App'x 448, 451 (5th Cir. 2019) (quoting 262 So. 3d at 1134). The same reasoning applies with equal force here.

Starr has failed to identify any source of compulsion other than avoiding potentially greater liability that could have arisen from a future coverage determination, *i.e.*, acting to protect its own interests. Docket No. 5 at 18-19.[4] This eliminates Starr's ability to allege that

---

[4] Specifically, Starr predicates its "compulsion" argument on: (1) "the imminent threat of an enforcement action being brought against Parker personally;" (2) "the failure of the Declaratory Judgment action to resolve the coverage issues;" (3) Parker's demands [that Starr satisfy the Judgment];" (4) "the Court's orders;" and (5) "the fact that negotiations with Liberty and Feldman to protect Parker were unsuccessful." Docket No. 5 at 19. First, Starr's own actions—including waiting until the eve of mediation in the Underlying Case to change position—contributed to the "imminent threat" it faced. *Cf. Genesis Ins. Co. v. Wausau Ins. Cos.*, 343 F.3d 733, 740 (5th Cir. 2003) ("While Wausau's questionable conduct placed Genesis in an unenviable position, the law does not permit us to grant Genesis and President immunity from the volunteer doctrine on the grounds that their settlement payments were compelled."). Second, its misrepresentation of this Court's Orders amounts to a legal conclusion that this Court does not have to accept as true. Third, because "compulsion" requires a legal duty, none of these asserted circumstances,

its payment in satisfaction of the judgment in the Underlying Case was compulsory at the time it was made. Simply alleging that it was compelled to make such a payment, despite the foregoing, amounts to an unsupported legal conclusion that this Court is not obligated to accept as true. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Starr's claim for Equitable Subrogation is dismissed.

Starr's claim for Contractual Subrogation fares no better. "Under Mississippi law, 'an obligation to indemnify may arise from a contractual relation.'" *Travelers Cas. & Surety Co. of Am. v. Nelms*, No. 3:16-CV-80, 2017 WL 1101099, at *3 (N.D. Miss. Mar. 22, 2017) (citing *Bush v. City of Laurel*, 215 So. 2d 256, 259 (Miss. 1968)) (cleaned up). Even in this context, "[a] party seeking indemnity 'must prove that (1) it was legally liable to an injured third party, (2) that it paid under compulsion, and that (3) the amount it paid was reasonable.'" *Id.* (quoting *Certain Underwriters at Lloyd's of London v. Knostman*, 783 So.2d 694, 698 (Miss. 2001)). *See also Travelers Cas. & Surety Co. of Am. v. Byrd*, No. 1:20-CV-66, 2020 WL 8298907, at *3 (S.D. Miss. Aug. 10, 2020) (quoting same in context of contractual indemnification provision). In *Byrd*, a sister court in this district determined that "broad language of the indemnity agreement [] 'does not override [the] general rule that an indemnitee must prove payment under compulsion and reasonableness before he may recover.'" *Id.* (quoting *Keys v. Rehab. Ctrs., Inc.*, 574 So.2d 579 (Miss. 1990). *See also Knostman*, 783 So.2d at 698 (Miss. 2001) (distinguishing an indemnity agreement obliging a party to indemnify claims "*whether such claim is valid or not*") (emphasis in original).

---

either alone or collectively, overcomes the voluntary payment doctrine. Indeed, as discussed *supra*, the "failure of the Declaratory Judgment action to resolve" before Starr's payment prohibits a finding of compulsion under *Colony*.

If Starr were allowed to amend its complaint as requested, Count II would reference the following two provisions:

5. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

Docket No. 62-1 at 20 (Proposed Third Amended Complaint stating provision from Liberty's Policy); and

K. Transfer of Rights of Recovery Against Others to Us

If the Insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring suit or transfer those rights to us and help us enforce them. Reimbursement of recovery(ies), minus expenses incurred by us in the process of recovery, will be first made to any interest (including the Insured) who has paid any amounts in excess of the limits of this Policy; then next to us; and then finally to all other interests (including the Insured and the underlying insurer) with respect to the remaining amounts, if any.

*Id.* at 20-21 (stating provision from Starr's Policy). Neither of these provisions contain language overriding the "general rule that an indemnitee must prove payment under compulsion." *Knostman*, 783 So.2d at 698. This Court agrees with the court in *Byrd* and applies the voluntary payment doctrine. 2020 WL 8298907, at *3 ("In the opinion of the Court, Travelers' lawsuit is subject to Mississippi's 'volunteer' or voluntary payment doctrine."). Starr's contractual subrogation claim is also dismissed.

The remaining two counts Negligence/Legal Malpractice (Count V); and Breach of Fiduciary Duty (Count VI) survive this stage. Because there was never an attorney-client relationship between Starr and Daniel Coker, with respect to this action, these claims are

12

wholly-derivative. *Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420, 424 (Miss. 2012) ("[W]hen lawyers breach the duty they owe to their clients, excess insurance carriers, who—on behalf of the clients—pay the damage, may pursue the same claim the client could have pursued."). While Starr may not pursue its claims of indemnification, as noted above, it has sufficiently pleaded allegations that allow it to pursue derivative claims for malpractice and breach of fiduciary duty. Whether these claims survive summary judgment is yet to be seen. The motion to dismiss is denied with respect to these claims.

Finally, the Court does not believe that the claims asserted here were so baseless as to require Rule 11 sanctions. The Court is concerned with Starr's willingness to misrepresent prior Orders and warns that the Court will consider the conduct that has already occurred together with any misconduct in the future, should separate grounds for sanctions arise. For now, however, the Court *encourages*[5] the parties to narrow the focus of this litigation to those meritorious claims supported by evidence uncovered in discovery. Daniel Coker's motion for sanctions, Docket No. 66, is denied.

## Conclusion

The Court has considered all arguments raised by the parties; those not addressed in this Order would not have changed the result. Daniel Coker's motion to dismiss, Docket No. 17, is granted in part and denied in part. Starr's first motion seeking leave to amend, Docket

---

[5] Hopefully by now, Starr understands this does not rise to the level of a Court Order. The Court can express its hope for adherence to the standards of decency and professionalism outside the confines of issuing an Order.

No. 33, is denied as moot; and Starr's second motion seeking leave to amend, Docket No. 62,

is denied as futile. Daniel Coker's motion for Sanctions, Docket No. 66, is denied.

SO ORDERED, this the 27th day of March 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE